IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

SECURA INSURANCE COMPANY, a Wisconsin company,

    Plaintiff,

v.

CAMELBACK DEVELOPMENT, LLC, a Colorado limited liability company,
THE RESIDENCES AT NEVADA PLACE CONDOMINIUM ASSOCIATION, a Colorado non-profit corporation
THE ROCK, Inc. a/k/a ROCK STUCCO
URBAN CONSTRUCTION, LLC, a Colorado limited liability company,

    Defendants.

## COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT

Plaintiff, SECURA Insurance Company ("SECURA"), by and through its attorneys, and pursuant to 28 U.S.C. §2201(a), §2202, and Fed. R. Civ. P. 57, for its Complaint for Declaratory Relief and Reimbursement states and alleges as follows:

### I. NATURE OF ACTION

1.    SECURA issued a series of commercial general liability and umbrella liability policies to The Rock a/k/a Rock Stucco ("Rock Stucco") effective January 1, 2010 to June 1, 2012. SECURA agreed to defend Camelback Development, LLC ("Camelback"), Urban Construction, LLC ("Urban"), and The Rock a/k/a Rock Stucco under a reservation of rights in an arbitration styled as *The Residences at Nevada Place Condominium Association v. Camelback Development et al. v. The Residences at Nevada Place Condominium Association et al.*, JAG No.

19-0584A ("Construction Arbitration"), which seeks damages for the allegedly defective and construction of the Nevada Place Condominiums in Littleton, Colorado (the "Project"). SECURA seeks a declaration it has no duty to defend or indemnify Camelback, Urban or Rock Stucco in the Construction Arbitration and seeks reimbursement of all defense costs incurred to date.

## II. PARTIES

2. Plaintiff SECURA is an insurance company incorporated in the State of Wisconsin, with a principal place of business located at 1500 Mutual Way, Neenah, Wisconsin 54956.  SECURA issued certain commercial general liability insurance policies to Rock Stucco, which are the subject of this Complaint.

3. Defendant Camelback is a dissolved Colorado limited liability company that had a principal place of business located at P.O. Box 6599, Denver, Colorado  80206.

4. Defendant Urban is a dissolved Colorado limited liability company that had a principal place of business located at 283 Columbine, #166, Denver, Colorado.

5. Defendant Rock Stucco is a Colorado corporation with a principal place of business at 140 S. Elati Street, Denver, Colorado.

6. Defendant The Residences of Nevada Place Condominium Association ("Association") is a Colorado non-profit corporation with its principal place of business in Highlands Ranch, Colorado.

## III. JURISDICTION AND VENUE

7. The Court has jurisdiction over this matter under 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff and Defendants in this action and the amount

in controversy exceeds $75,000, exclusive of interest and costs.  Plaintiff is a citizen of the State of Wisconsin, and all Defendants are citizens of the State of Colorado.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  SECURA has incurred in excess of $75,000 defending Urban, Camelback and Rock Stucco in the Construction Arbitration. Additionally, the Association alleges approximately $2,000,000 to repair the Project.

8. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this Court.

## IV.  GENERAL ALLEGATIONS

9. On or about October 12, 2019, Rock Stucco entered into a Subcontract Agreement with Urban to perform masonry and stucco work at the Project.  The Subcontract Agreement required Rock Stucco to provide additional insured coverage to Urban and Camelback for damages arising out of Rock Stucco's work.  Upon information and belief, Rock Stucco completed its work at the Project in August 2010.

10. Upon information and belief, the Association initiated the Construction Arbitration against Urban and Camelback seeking damages for the allegedly defective construction of the Project.  The Association's November 12, 2019 Amended Demand for Arbitration alleges Urban and Camelback were negligent in their construction of the Project, seeks damages to repair the alleged damage and defects caused by Urban and Camelback, and includes five claims for relief against Camelback and Urban:  (1) Negligence; (2) Negligence Per Se; (3) Breach of the Implied Warranties; (4) Breach of CCIOA; and (5) Breach of Fiduciary Duty.  *Ex. A, Amended Demand for Arbitration.*

11. With respect to the timing of the claimed damage at the Project, the Association alleges:

Claimant is informed and believes, and based thereon alleges that the Association has suffered damages resulting from construction defects beginning on or about the time of the first transfer of the units to Association's members and/or their predecessors. *Ex. A at ¶ 21.*

12. The first unit at the Project was sold in June 2014, and the remaining units were sold in 2014, 2015, and 2016.

13. Urban and Camelback tendered the Construction Arbitration to SECURA for defense and indemnification as additional insureds under the policies issued by SECURA to Rock Stucco. SECURA agreed to defend Urban and Camelback under a reservation of rights.

14. Urban and Camelback filed cross-claims against Rock Stucco and other subcontractors involved in the construction of the Project. *Ex. B, Demand for Arbitration of Cross-Claim.* Urban and Camelback seek damages from Rock Stucco and other subcontractors involved in the Project to the extent they are liable to the Association. SECURA agreed to defend Rock Stucco under a reservation of rights.

15. SECURA has continued to review and investigate this matter. There is no evidence of "property damage" arising from Rock Stucco's work to the Project prior to the first sale of the units in June 2014.

## V. SECURA POLICIES

16. SECURA issued the following pertinent policies to Rock Stucco:

The Target Contractor Policies ("CGL Policies"):

- o 20-TC-003158757-0/002; eff. January 1, 2010 to June 1, 2010
- o 20-TC-003158757-1/006; eff. June 1, 2010 to June 1, 2011
- o 20-TC-003158757-2/005; eff. June 1, 2011 to June 1, 2012

The Commercial Umbrella Policies ("Commercial Umbrella Policies")
- o 20-CU-003158758-0/001; eff. January 1, 2010 to June 1, 2010
- o 20-CU-003158758-1/000; eff. June 1, 2010 to June 1, 2011

4

    o   20-CU-003158758-2/001; eff. June 1, 2011 to June 1, 2012

17. Each CGL Policy is subject to a $1,000,000 per occurrence limit of liability, $2,000,000 general aggregate limit of liability and $2,000,000 products completed operations aggregate limit of liability.

18. Each Commercial Umbrella Policy is subject to a $1,000,000 aggregate limit, which is excess to the limit of the CGL Policy.

19. The CGL Policies and Commercial Umbrella Policies shall sometimes collectively be referred to as the "SECURA Policies".

20. The Insuring Agreement in the CGL Policies provides, in relevant part, as follows:

    1. Business Liability

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply.

    \* \* \*

    b. This insurance applies:

    (1) To "bodily injury" and "property damage only if:

    (a)    The "bodily injury" or "property damage is caused by an "occurrence that takes place in the "coverage territory";
    (b)    The "bodily injury" or "property damage occurs during the policy period; and
    (c)    Prior to the policy period, no insured listed under Paragraph C.1. Who Is An Insured and no "employee authorized by you to give

5

> or receive notice of an "occurrence or claim, knew that the "bodily injury" or "property damage had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

> (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

> c. Additional Business Liability insuring agreement provisions include:

>> (1). "Bodily injury" or "property damage which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph C.1. Who Is An Insured or any "employee authorized by you to give or receive notice of an "occurrence or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

>> (2). "Bodily injury" or "property damage will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph C.1. Who Is An Insured or any "employee authorized by you to give or receive notice of an "occurrence or claim:
>> (i) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
>> (ii) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>> (iii) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

21. The Insuring Agreement in the Commercial Umbrella Policies provides:

**PART l - COVERAGE**

1. **Limit of liability**

   **We** will pay **loss** in excess of the **primary** limit as listed in **Schedule A** or the **retained limit** (if not covered by **primary** but otherwise covered by this policy) because of

>    Coverage A — **Bodily Injury,**
>    Coverage B — **Property Damage,**
>    Coverage C — **Personal Injury, or**
>    Coverage D — **Advertising Injury**
>
> caused by an **occurrence** to which this policy applies and such injury or damage happening anywhere during the policy period.
>
> **We** will pay **loss** only up to the limit of liability shown in the Declarations, however, if an aggregate limit applies on this policy with respect to such **loss, we** will pay only to the extent the aggregate limit has not been used up due to previous payment of **losses.**

22. Thus, coverage is triggered under the SECURA Policies for "property damage" caused by an "occurrence" during the applicable policy periods. Here, there is no evidence of any "property damage" during the SECURA policy years.

23. Further, Urban and Camelback are only entitled to coverage to the extent they have liability arising out of Rock Stucco's work:

> **1. Additional Insured When Required by Written Construction Contract**
>
>   **A. Operations Performed for an Additional Insured**
>
>   Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage or "personal and advertising injury" caused, in whole or in part, by:
>
>   1. Your acts or omissions; or
>   2. The acts or omissions of those acting on your behalf; in the performance of your ongoing operations for the additional insured.
>
>   A person's or organization's status as an additional insured under this provision ends when your operations for that additional insured are completed.

7

B. **Limitations**

The Operations Performed for an Additional Insured coverage is limited as follows:

1. This insurance does not apply to "Bodily injury", "property damage or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

   a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. Supervisory, inspection, architectural or engineering activities.

2. This insurance does not apply to "Bodily injury" or "property damage occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

3. The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever is less. These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations. If other insurance available to you and written by us is applicable to this additional insured, the maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit under any one coverage form or policy providing coverage on either a primary or excess basis.

**2. Additional Insured When Required by Written Construction Contract — Completed Operations**

A. **Additional Insured - Completed Operations**

WHO IS INSURED is amended to include as an additional insured any person or organization, when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy, but only with respect to "bodily injury" or "property damage" caused, in whole or in part, by "your work" performed for that additional insured and included in the "products-completed operations hazard'.

B. **Limitations**

The Additional Insured - Completed Operations coverage is limited as follows:

1. A person or organization's status as an insured under Additional Insured - Completed Operations continues only for the period of time required by the written contract or agreement. If no time period is required by the written contract or agreement, a person or organization's status as an additional insured under this endorsement will not apply beyond the lesser of:

   a. The period of time required by the written contract or agreement; or
   b. Five years from the completion of "your work" on the project which is the subject of the written contract or agreement.

2. The insurance as provided to the additional insured does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of "your work" for which a consolidated (wrap-up) insurance program has been provided by the prime contractor-project manager or owner of the construction project in which you are involved.

3. The Limits of Insurance applicable to the additional insured are those specified in the written contract or agreement or in the Declarations for this policy, whichever is less. These Limits of Insurance are inclusive and not in addition to the Limits of Insurance shown in the Declarations. If other insurance available to you and written by us is applicable to this additional insured, the maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit under any one coverage form or policy providing coverage on either a primary or excess basis.

4. The coverage provided to the additional insured by this endorsement and by paragraph f. of the definition of "insured contract" under DEFINITIONS do not apply to "bodily injury" or "property damage" arising out of the "products-

9

completed operations hazard" unless required by the written contract or agreement.

24. Various exclusions may also apply to bar coverage for Urban, Camelback and/or Rock Stucco. The CGL Policies include the following exclusions:

### m. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### n. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product" or "your work" after it has been put to its intended use.

25. The Commercial Umbrella Policies includes Exclusion 7, which provides in pertinent part, as follows:

This policy does not apply to:

***

B. **Property Damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard;**

C. **Property Damage** to **impaired property** or property that has not been physically injured, arising out of:

      (1)  A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work;** or

      (2)  A delay or failure by **you** or anyone acting on **your behalf** to perform a contract or agreement in accordance with its terms.

## VI.  CLAIMS FOR RELIEF

### Count One – Declaratory Judgment
### No Duty to Defend – No "Property Damage" During the SECURA Policy Periods
### All Defendants

26.    SECURA incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

27.    The SECURA Policies extend coverage for "property damage" during the applicable policy periods – January 1, 2010 to June 1, 2010, June 1, 2010 to June 1, 2011, and June 1, 2012.

28.    The Association alleges the damage to the Project occurred sometime after the first transfer of the units to the Association's members or predecessors. There is no allegation of "property damage" in the Amended Demand for Arbitration arising out of Rock Stucco's work prior to the sale of the units, which occurred years after the expiration of the last SECURA Policies. Camelback and Urban seek damages in the Demand for Arbitration of Cross-Claim from Rock Stucco and the other subcontractors to the extent liable to the Association for the damage alleged in the Demand for Arbitration.

29.    Based upon the allegations in the Amended Demand for Arbitration, Demand for Arbitration of Cross-Claim, the pertinent language in the SECURA Policies, the evidence developed in the Construction Arbitration, and applicable law, SEUCRA has no duty to defend

11

Camelback, Urban or Rock Stucco in the Construction Arbitration, and is entitled to a declaration it has no duty to defend.

30.     An actual controversy has arisen and now exists with respect to SECURA's duty to defend under the SECURA Policies with respect to the Construction Arbitration.

31.     Pursuant to Fed.R.Civ.P. 57(a), this Court can and should determine the rights and obligations under the SECURA Policies with respect to the Construction Arbitration.

## Count Two – Declaratory Judgment
### No Duty to Indemnify – No "Property Damage" During the SECURA Policy Periods
### All Defendants

32.     SECURA incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

33.     The SECURA Policies extend coverage for "property damage" during the applicable policy periods – January 1, 2010 to June 1, 2010, June 1, 2010 to June 1, 2011, and June 1, 2012.

34.     The damage to the Project occurred sometime after the first transfer of the units to the Association's members or predecessors.  There is no allegation or evidence of "property damage" arising out of Rock Stucco's work prior to the sale of the units, which occurred years after the expiration of the last SECURA Policies.   Camelback and Urban seek damages in the Demand for Cross-Claim from Rock Stucco and the other subcontractors to the extent liable to the Association.

35.     An actual controversy has arisen and now exists with respect to SECURA's duty to indemnify under the SECURA Policies with respect to the Construction Arbitration.

36. Pursuant to Fed.R.Civ.P. 57(a), this Court can and should determine the rights and obligations under the SECURA Policies with respect to the Construction Arbitration.

### Count Three – Declaratory Judgment
### No Duty to Indemnify
### All Defendants

37. SECURA incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

38. While there is no evidence of "property damage" during the SECURA Policies, other provisions also operate to bar or limit coverage to Camelback, Urban and/or Rock Stucco for the claims and damages alleged in the Construction Arbitration, including but not limited to:

- Any alleged "property damage" during the policy periods must be caused by an "occurrence";

- Exclusions m. and n. in the CGL Policies operate to bar or limit coverage under the SECURA Policies;

- Exclusion 7 in the Commercial Umbrella Policies operates to bar or limit coverage under the SECURA Policies; and

- Urban and Camelback are only entitled to coverage as additional insureds under the SECURA Policies as outlined by the additional insured endorsements in the CGL Policies for liability arising out of Rock Stucco's work.

39. One or more of the policy provisions outline herein bar or limit coverage to Camelback, Urban and Rock and thus, limit SECURA's duty to indemnify, if any.

40. An actual controversy has arisen and now exists with respect to SECURA's duty to indemnify under the SECURA Policies with respect to the Construction Arbitration.

41. Pursuant to Fed.R.Civ.P. 57(a), this Court can and should determine the rights and obligations under the SECURA Policies with respect to the Construction Arbitration.

### Count Four - Reimbursement
### Camelback, Urban and Rock Stucco

42. SECURA incorporates by reference the allegations contained in all preceding paragraphs as if set forth fully herein.

43. SECURA is defending Camelback, Urban and Rock Stucco under a full and complete reservation of rights.

44. SECURA has no duty to defend Camelback, Urban and Rock Stucco in the Construction Arbitration.

45. SECURA seeks reimbursement from Camelback, Urban and Rock Stucco, respectively, for the attorneys and costs incurred to defend the entities in the Construction Arbitration.

46. This dispute is appropriate and ripe for adjudication. Camelback, Urban and Rock Stucco sought coverage from SECURA for the Construction Arbitration, and SECURA disputes it has a duty to defend Camelback, Urban, and Rock Stucco in the Construction Arbitration. SECURA is entitled to reimbursement of all fees and costs incurred to defend the Construction Arbitration.

## VII.  RELIEF REQUESTED

WHEREFORE, SECURA prays for the following relief:

(1)  Against all Defendants declaring that SECURA has no duty to defend or indemnify Camelback, Urban and Rock Stucco in the Construction Arbitration;

(2)  Against all Defendants declaring that SECURA is entitled to withdraw from further participation in the defense of Camelback, Urban and Rock Stucco in the Construction Arbitration;

(3)  Against each Camelback, Urban, and Rock Stucco for reimbursement of the attorney fees and costs incurred to defend each in the Construction Arbitration; and

(4)  For interest and costs allowed by law.

Respectfully submitted this 31st day of March, 2021.

By: */s/ Jane E. Young*
  Jane E. Young
  Cody W. Goings
  McElroy, Deutsch, Mulvaney & Carpenter, LLP
  5600 South Quebec Street, Suite C100
  Greenwood Village, Colorado 80111
  Tel:  (303) 293-8800
  Fax: (303) 839-0036
  jyoung@mdmc-law.com
  cgoings@mdmc-law.com
  *Attorneys for Plaintiff, SECURA Insurance Company*

**Plaintiff's Address**:
1500 Mutual Way
Neenah, Wisconsin 54956